```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

ZOILA PEREZ,
    Plaintiff,

    v.                                                      CIVIL ACTION NO.
                                                               18-10284-MBB

BROCKTON NEIGHBORHOOD
HEALTH CENTER, INC. and
LINDA GABRUK,
    Defendants.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTIONS FOR REMAND TO COMMONWEALTH**
**OF MASSACHUSETTS SUPERIOR COURT, ESSEX**
**COUNTY (DOCKET ENTRY ## 11, 33);**
**MOTION FOR LEAVE TO AMEND**
**(DOCKET ENTRY # 30)**

**January 9, 2019**

**BOWLER, U.S.M.J.**

    Pending before this court are two motions to remand this action to Massachusetts Superior Court (Essex County) ("state court"). (Docket Entry ## 11, 33). After plaintiff Zoila Perez ("plaintiff") filed the first motion, she filed a motion to amend the complaint to eliminate the only federal claim (Docket Entry # 30) as well as a motion to dismiss the federal claim (Docket Entry # 35). Defendants Brockton Neighborhood Health Center, Inc. ("BNHC") and Linda Gabruk ("Gabruk"), who timely removed this action from state court based on federal question jurisdiction, see 28 U.S.C. §§ 1331, 1441(c), 1446(b), oppose the foregoing motions. (Docket Entry ## 12, 38).

PROCEDURAL BACKGROUND

On December 21, 2017, plaintiff, an Hispanic female, filed this constructive termination, workplace discrimination, and retaliation action against her former employer, BNHC, and Gabruk, BNHC's chief executive officer, in state court. The original complaint sets out 11 causes of action. Count XI presents the only federal claim, namely, a retaliation claim under the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA").

Defendants removed this action to federal court in February 2018. On March 12, 2018, plaintiff filed the first motion to remand on the basis that the FMLA claim "is intertwined with the predominant state law claims" and therefore "mandates remand to state court." (Docket Entry # 16). The motion did not include a certification that plaintiff's counsel conferred with opposing counsel before filing the motion. See LR. 7.1(a)(2). Defendants oppose the motion to remand and, based on the alleged non-compliance with LR. 7.1, request sanctions in the form of "reasonable costs and attorney's fees incurred in opposing Plaintiff's baseless motion." (Docket Entry # 12). Defendants argue that removal was proper because the face of the original complaint presents a federal question in light of the FMLA claim in Count XI. (Docket Entry # 12). On April 26, 2018, this court held a hearing and took the first motion to remand (Docket Entry # 11) under advisement.

On May 9, 2018, plaintiff filed the motion for leave to amend the complaint to eliminate the FMLA claim. (Docket Entry # 30). On the same day, she separately filed the motion to dismiss the FMLA claim and the second motion to remand the case back to state court. (Docket Entry ## 33, 35). In seeking a remand, plaintiff contends that even assuming supplemental jurisdiction exists over the state-law claims, this court should exercise its discretion to remand the case to state court in the interest of efficiency and comity. (Docket Entry # 33).

## FACTUAL BACKGROUND[1]

The facts are relatively straight forward. Plaintiff began her employment at BNHC in January 2013 as a limited licensed dentist. (Docket Entry # 1-4, ¶ 13). The FMLA claim involves plaintiff's November 2014 request for vacation time to take care of her sick mother in the Dominican Republic. (Docket Entry # 1-4, ¶¶ 23, 24, 30). Gabruk insisted that plaintiff "charge[] that time to FMLA" time even though BNHC and Gabruk ("defendants") previously "allowed several of its employees to utilize their vacation time to take care of an ailing family member." (Docket Entry # 1-4, ¶ 25). Defendants then used plaintiff's FMLA leave as an "adverse factor" in a March 2015 performance evaluation and "as a reason to deny her annual raise." (Docket Entry # 1-4, ¶¶

---

[1] The factual background sets out the facts in the original complaint rather than the proposed amended complaint.

3

26, 167). They also retaliated against "[p]laintiff for exercising her rights under the [FMLA]." (Docket Entry # 1-4, ¶ 168).

That said, other events in the complaint overshadow the foregoing basis for the FMLA claim. Before plaintiff left for the Dominican Republic to take care of her mother in December 2014, she applied to the Commonwealth of Massachusetts Board of Registration in Dentistry for a re-certification of her license. She did not, however, submit a re-credentialing application to BNHC in time for BNHC's board of directors to vote on the application at a December 27, 2014 meeting. (Docket Entry # 1-4, ¶¶ 27, 30-34). As a result, Gabruk refused to allow plaintiff to return to work from January 8 to February 2, 2015 on the basis that BNHC does not allow BNHC providers to work with expired BNHC credentials. (Docket Entry # 1-4, ¶¶ 40-41). BNHC nevertheless allowed other providers to work with expired credentials, according to the complaint. (Docket Entry # 1-4, ¶¶ 42-47, 54, 55).

Plaintiff's first performance review in January 2014 "showed that [she] exceeded expectations in several areas." (Docket Entry # 1-4, ¶ 21). Her second performance evaluation on March 3, 2015 showed a negative trend with an "unsatisfactory"

attendance record,[2] "unsatisfactory" organization skills, and
"adequate" ratings in all other categories. (Docket Entry # 1-4,
Ex. 1). During a March 3, 2015 performance evaluation meeting,
Gabruk purportedly unfairly criticized plaintiff for the poor
quality of her work and lack of productivity. (Docket Entry # 1-
4, ¶¶ 57-65). Thereafter, Gabruk gave plaintiff a verbal warning
for unprofessional conduct and made a "string of other false
accusations." (Docket Entry # 1-4, ¶¶ 73-75).

After an April 2015 meeting with Gabruk as well as
plaintiff's Direct Supervisor, plaintiff complained to BNHC's
Human Resources Director about alleged "unequal and disparate
treatment . . ., the hostile work environment . . . and Gabruk's
racial bias."[3] (Docket Entry # 1-4, ¶¶ 70, 76). In late April
2015, plaintiff filed a complaint with the Massachusetts
Commission Against Discrimination ("MCAD"). Thereafter,
defendants engaged in "several acts of retaliation and further
discrimination" which had little, if anything, to do with the
prior FMLA leave. (Docket Entry # 1-4, ¶¶ 86, 96-105). These

---

[2] The evaluation includes an explanation that in 2014 plaintiff "was late 118 days" and "left early 84 days." (Docket Entry # 1-4, Ex. 1).

[3] The report to the Human Resources Director does not mention FMLA-associated retaliation of the denial of the annual raise based on the FMLA leave.

5

include a demotion from dentist to hygienist,[4] a schedule change, taking away one of plaintiff's "two operatories," and additional false accusations disparaging plaintiff's work. (Docket Entry # 1-4, ¶¶ 97-99, 102-105). The alleged hostile work environment, retaliation, and discrimination purportedly led to plaintiff's resignation in the fall of 2015. (Docket Entry # 1-4, ¶¶ 112, 114).

The complaint includes ten causes of action or claims under state law. Counts I, VI, VII, and X allege race, color, and ethnicity discrimination in violation of Massachusetts General Laws chapter 151B, sections 4(1), 4(4A), and 4(5). State common law claims consist of negligent and intentional infliction of emotional distress, wrongful termination, and breach of the covenant of good faith and fair dealing in counts III, IV, V, VIII, and IX. Count II raises a workplace retaliation claim under Massachusetts General Laws chapter 149 ("chapter 149"), section 185, and presents the most analogous state-law claim to the FMLA retaliation claim. (Docket Entry # 1-4). Except for the final paragraphs setting out the FMLA claim (Docket Entry # 1-4, ¶¶ 165-169), the proposed amended complaint tracks the language of the original complaint and includes the same state-

---

[4] The timing of the demotion is not entirely clear. The complaint simply states it was "later," i.e., presumably later than the complaints to the Human Resources Director and the MCAD set out in previous paragraphs in the complaint. (Docket Entry # 1-4, ¶¶ 86, 105).

law causes of action in ten separate counts (Docket Entry # 32).

DISCUSSION

A. The Initial Removal

A defendant may remove a case filed in state court when the federal court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Federal question jurisdiction exists in "civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 ("section 1331"). As the proponents of federal question jurisdiction, defendants have the burden of showing it is proper. Barrett v. Lombardi, 239 F.3d 23, 30 (1st Cir. 2001).

"'Ordinarily, determining whether a particular case arises under federal law turns on the "well-pleaded complaint" rule.'" Coon-Retelle v. Verizon New England Inc., Civil Action No. 16-11530-DJC, 2017 WL 1234115, at *3 (D. Mass. Mar. 10, 2017) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004)). In particular, a "plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed." Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't of Environmental Management, 585 F.3d 42, 48 (1st Cir. 2009) ("Fishermen's Alliance"). The claims in the state

court complaint as they existed at the time of removal govern the determination. Lawless v. Steward Health Care System, LLC, 894 F.3d 9, 17 (1st Cir. 2018).

Here, the complaint filed in state court contains "an explicit federal cause of action" under the FMLA. Fishermen's Alliance, 585 F.3d at 48. Plaintiff's post-removal characterization of the FMLA claim as intertwined with the chapter 149 retaliation claim (Docket Entry # 16) does not alter the face of the complaint, which explicitly pleads the FMLA claim in Count XI. See Ching v. Mitre Corp., 921 F.2d 11, 13 (1st Cir. 1990) ("[i]t is immaterial that, in retrospect, appellant views his ADEA claim as surplus") ("Ching"). Plaintiff's argument that the embedded federal question branch of federal question jurisdiction under Grable & Sons Metal Products v. Darue Engineering & Manufacturing, 545 U.S. 308, 313-314 (2005) ("Grable"), does not apply is immaterial where, as here, federal question jurisdiction exists under the more familiar category of direct federal questions. See Fishermen's Alliance, 585 F.3d at 48 (describing the two independent and separate categories to establish federal question jurisdiction). Removal was proper.

B. Amendment and Remand

With federal question jurisdiction over the FMLA claim, supplemental jurisdiction under 28 U.S.C. § 1367(a) ("section 1367") exists over all state-law causes of action that "derive

8

from a common nucleus of operative fact or are such that they would ordinarily be expected to be tried in one judicial proceeding." Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC, 730 F.3d 67, 72 (1st Cir. 2013) (internal quotation marks, citations, and brackets omitted). The federal claim derives from the forced use of FMLA leave followed by Gabruk's use of that leave as a negative factor in the March 2015 evaluation and BNHC's use of the leave as a reason to deny plaintiff the annual raise. (Docket Entry # 1-4, ¶¶ 23-26). The latter conduct in denying the annual raise presumably implicates the alleged retaliation against plaintiff for exercising her FMLA rights.[5] (Docket Entry # 1-4, ¶ 168). The state-law claims derive from plaintiff's employment at BNHC, her relationship and interactions with Gabruk during that employment, plaintiff's complaints to BNHC's Human Resources Director and the MCAD, various purportedly false accusations, and the circumstances surrounding her resignation. The commonality of these facts is such that a single judicial proceeding would be expected. Hence, this court has federal question jurisdiction over the FMLA claim and supplemental jurisdiction over all of the state-law claims in the complaint.

---

[5] The complaint does not precisely identify which facts constitute retaliation specific to the FMLA leave and the other forms of retaliation in the complaint are not expressly tied to FMLA leave.

Next, plaintiff seeks to amend the complaint to omit the FMLA claim by eliminating the paragraphs in Count XI and the count itself. (Docket Entry # 30). The proposed amended complaint retains the allegations that Gabruk "used [plaintiff's] utilization of the FMLA as a negative and adverse factor in" the March 2015 evaluation and that BNHC used the "FMLA leave as a reason to deny [plaintiff's] annual raise." (Docket Entry # 32, ¶ 26). Defendants oppose amendment on the basis of undue prejudice and undue delay. (Docket Entry # 38). They identify the delay as caused by plaintiff filing the first and second motions for a remand and by not conferring with defendants in accordance with LR. 7.1. (Docket Entry # 38). Citing Ching, 921 F.2d at 13, defendants further maintain that plaintiff cannot amend the complaint "to remove a federal law claim solely to defeat federal jurisdiction." (Docket Entry # 38).

"[U]ndue delay and undue prejudice" undeniably "provide a basis to deny an amendment." Dean v. Champion Exposition Services, Inc., Civil Action No. 11-11939-PBS, 2013 WL 1992234, at *6 (D. Mass. May 10, 2013) (citing Palmer v. Champion Mortgage, 465 F.3d 24, 20 (1st Cir. 2006)). Furthermore, "[a]ppreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend." Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 20 (1st Cir. 2013); see Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st

Cir. 2004) ("protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for" court to deny amendment). Far from any undue or any protracted delay, the delay caused by plaintiff seeking to remand this action or by not complying with LR. 7.1 is minimal. Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998) ("'undue delay' in seeking the amendment may be a sufficient basis for denying leave to amend" and citing cases affirming denials of amendment after 14 and 17 month delays). Contrary to defendants' argument, the additional attorney's fees and costs associated with this minimal delay are not sufficiently prejudicial to warrant denying the motion to amend, which plaintiff filed relatively early in this litigation. There is also no indication of any delay in conducting discovery, which is presently ongoing, inasmuch as this court adopted the parties' joint schedule at the April 26, 2018 hearing. (Docket Entry ## 25, 28). The amendment does not entail re-opening discovery with additional costs or a likely change of defendants' trial tactics. See Steir v. Girl Scouts of the USA, 383 F.3d at 12 (disfavoring "motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy'"). Although plaintiff's motive more than likely includes a desire to

11

accomplish a remand to state court, any additional delay caused by such a remand is not significant enough to warrant denying the amendment under the circumstances.

Defendants' reliance on Ching to argue that plaintiff cannot "amend her complaint to remove a federal law claim solely to defeat federal jurisdiction or controvert First Circuit precedent" (Docket Entry # 38) overstates the import of the decision. See Commonwealth of Mass. v. V & M Management., Inc., 929 F.2d 830, 834 (1st Cir. 1991) ("V & M"). In affirming a denial of the plaintiff's motion to strike a federal claim after removal, the First Circuit in Ching stated that, "An amendment to a complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction" and the district court's decision to remand the state-law claims is discretionary. Ching, 921 F.2d at 13 (citations omitted). Thus, an amendment to eliminate the federal claim does not defeat federal jurisdiction over the state-law claims because supplemental jurisdiction exists over those claims. See Lawless v. Steward Health Care System, LLC, 894 F.3d at 19. Rather, an elimination of the anchoring federal claim "sets the stage for an exercise of the court's informed discretion." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256–57 (1st Cir. 1996); accord Lawless v. Steward Health Care System, LLC, 894 F.3d at 19 (once "supplemental jurisdiction has attached, the mere fact that the

anchoring federal claim subsequently goes up in smoke does not, without more, doom all pendent state-law claims") (citations omitted).

Notably, the First Circuit decision in V & M rendered after Ching rejects defendants' interpretation of the Ching decision. Commonwealth of Mass. v. V & M Management., Inc., 929 F.2d at 834-835. The defendants in V & M:

> contend[ed] that "[t]he granting of the Motion to Amend for the purpose of permitting the Plaintiff to return to the State court is squarely prohibited by the controlling law of this Circuit," citing this court's opinion in Ching v. Mitre Corp., 921 F.2d 11 (1st Cir. 1990). Defendants' interpretation of the Ching decision is erroneous.
>
> Defendants seek to transmogrify this statement of law into an absolute bar to an amendment which seeks to drop a federal claim from a complaint. But that attempt distorts not only this statement of law but the holding in the Ching decision itself. In Ching, we were addressing the existence of federal jurisdiction at the time of removal and events after removal, such as striking of the federal claim which supported removal, are simply immaterial to that question. Once a case is properly removed, a district court has jurisdiction over the entire case, whether or not the basis for removal, i.e., the federal claim, thereafter remains. Although the district court has jurisdiction to rule on the remaining state claims, even after the dismissal or withdrawal of all federal claims, it need not exercise that jurisdiction. As we said in Ching, "[i]t was discretionary with the district court whether to remand the state claims." Id. As it was discretionary with the district court in Ching to deny remand and rule that all of Ching's claims were barred by relevant statutes of limitations, so too it was discretionary with the district court, in the instant case, to grant remand of the state claims.

Commonwealth of Mass. v. V & M Management., Inc., 929 F.2d at 834-835.

Accordingly, the proposed amendment is permissible under V &

13

M and will not result in either undue delay or undue prejudice. As such, it is appropriate.

Ordinarily, the resulting absence of the anchoring federal claim leads to an inquiry regarding whether to retain supplemental jurisdiction over the state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Defendants, however, argue that "[u]nder the substantial federal question doctrine," federal question jurisdiction still exists. (Docket Entry # 38) (discussing Grable, 545 U.S. 308, 313-314 (2005)). Separately, defendants maintain this court should exercise its discretionary power to retain jurisdiction over the supplemental state-law claims. (Docket Entry # 38).

As noted previously, federal question jurisdiction may arise when "a state-law cause of action . . . contains an embedded question of federal law that is both substantial and disputed." Fishermen's Alliance, 585 F.3d at 48. This category of federal question jurisdiction is rare. See id.; Gilmore v. Weatherford, 694 F.3d 1160, 1171 (10th Cir. 2012) ("[t]he 'substantial question' branch of federal question jurisdiction is exceedingly narrow"); Byrne v. Wood, Herron & Evans, LLP, 676 F.3d 1024, 1033 (Fed. Cir. 2012) ("even where state law claims involve federal law questions over which federal courts have exclusive jurisdiction . . . or more garden-variety federal issues" such as Title VII, "courts consistently" reject federal question

jurisdiction).  Where, as here, the now-operative amended complaint contains only state-law causes of action, federal question jurisdiction exists if a state-law "cause of action 'necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'"  Fishermen's Alliance, 585 F.3d at 48 (quoting Grable, 545 U.S. at 314).  More succinctly, federal question jurisdiction over a state law claim exists "if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn v. Minton, 568 U.S. 251, 258 (2013).  The chapter 149 retaliation claim presents "the most promising candidate for federal jurisdiction" and therefore provides the basis for the analysis.  See Fishermen's Alliance, 585 F.3d at 49 (examining the state-law claim with the "most promising" basis for federal jurisdiction).

First, federal question jurisdiction is not consistent with the "'congressionally approved balance of federal and state judicial responsibilities.'"  Id. (quoting Grable, 545 U.S. at 314).  If every chapter 149 retaliation claim based on a plaintiff's use of FMLA leave were subject to Grable's substantial question of federal law category, then every state

15

employment retaliation case brought under chapter 149 involving an employee's use of FMLA leave would be subject to removal. See Garrett v. S. Newspapers, Inc., No. CV H-18-2578, 2018 WL 4352914, at *1 (S.D. Tex. Sept. 12, 2018) (if every workplace discrimination claim under Texas Commission on Human Rights Act gave rise to "substantial question of federal law, then every state employment discrimination case brought under the TCHRA could be properly removed to federal court"). Such a result displaces the federal and state judicial balance.

Second, the federal issue that defendants used the FMLA leave as a negative and adverse factor and/or engaged in retaliation based on plaintiff's exercise of her FMLA rights does not implicate a "substantial" federal issue. See Dube v. LDRV Holdings Corp., No. 8:15-CV-1187-T-30 AEP, 2015 WL 3915658, at *3 (M.D. Fla. June 25, 2015) (state employment discrimination and retaliation claim under Florida Civil Rights Act "does not implicate significant federal issues"). "'[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as Grable *separately* requires.'" Gunn, 568 U.S. at 260 (emphasis added); see Abella v. Seven Seven Corp. Grp., No. CIV. 2:13-05263 WJM, 2014 WL 220570, at *3 (D.N.J. Jan. 21, 2014) ("'Grable provides federal jurisdiction where disputes center around the meaning—as

16

opposed to the application—of federal law'") (citation omitted). Rather, a federal element in a "state law claim 'qualifies as "substantial"'" when its resolution is not only "dispositive of the case, but would be controlling in other cases." Vitellaro v. Mayor & Twp. Council of Twp. of Hanover, No. CIV. A. 09-3310 WJM, 2009 WL 5204771, at *2 (D.N.J. Dec. 23, 2009) (state discrimination claims under state constitution did not fall under Grable's category of federal question jurisdiction); see Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700–701 (2006) (in contrast to Grable's "nearly 'pure issue of law'" which "'would govern numerous tax sale cases,'" plaintiff's claim "is fact-bound and situation-specific"). Plaintiff's use of FMLA leave and the nature of defendants' retaliation, if any, for plaintiff's exercise of her FMLA rights are fact-bound determinations and, to the extent they implicate federal issues, are not likely to impact other cases.

Third, the federal FMLA-related retaliation with the denial of plaintiff's annual raise is one of several ways in which defendants purportedly retaliated against plaintiff under chapter 149. Another method of retaliation and adverse action includes the demotion from a dentist to a hygienist along with the removal of an "operatory." Where, as here, the state law claim "provides an alternative ground for recovery, the federal issue is not 'necessarily raised.'" PlainsCapital Bank v. Rogers, 715 F.

17

App'x 325, 329-332 (5th Cir. 2017) (collecting authority) (unpublished); Nevada v. Bank of Am. Corp., 672 F.3d 661, 675 (9th Cir. 2012) (when "claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim"). In other words, the success of the chapter 149 claim does not depend on giving effect to the FMLA-based retaliation. See generally Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 136 S. Ct. 1562, 1570 & n.4 (2016) (state law "claim's very success depends on giving effect to a federal requirement"). Accordingly, the chapter 149 claim does not necessarily raise a federal FMLA retaliation issue. In sum, the amended complaint and the chapter 149 claim do not fall within Grable's limited reach.

The issue therefore reduces to whether retaining jurisdiction over the state law claims is appropriate under section 1367(c)(3). Plaintiff argues that a remand will promote values of efficiency and comity. (Docket Entry # 33). Defendants contend this court should retain supplemental jurisdiction over the state-law claims. (Docket Entry # 38).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy,

18

convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). It is "an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state-law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" Wilbur v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017). This court also has the "discretion to *remand* to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." Carnegie-Mellon, 484 U.S. at 357 (emphasis added).

Turning to the task and although discovery is ongoing, there is no trial date or pending dispositive motions. See Smith v. Town of W. Bridgewater, Civil Action No. 16-11714-FDS, 2018 WL 3370624, at *8 (D. Mass. July 10, 2018) (remanding state law claims even though "case is not in early stages" with fact discovery closed and dispositive motions filed). Plaintiff also sought a remand at the outset of discovery. Although "there may be some delay associated with the remand, . . . there will be little duplication of effort" insofar as the parties can use the existing discovery and initial disclosures in the state court proceeding. See id.; Esty v. Town of Haverhill, No. 17-CV-59-AJ, 2018 WL 2871862, at *14 (D.N.H. June 8, 2018) (allowing remand

19

while noting that "parties have already fully briefed and argued the summary judgment issues here and should be ready to do the same in state court"). These and other interests including comity in light of the state court's interest "in deciding the substantive state-law issues," Smith, 2018 WL 3370624, at *8, support a remand.

CONCLUSION

In accordance with the foregoing discussion, the motion for leave to amend (Docket Entry # 30) is **ALLOWED** and this case is **REMANDED** to Massachusetts Superior Court (Essex County) under section 1367(c). The second motion to remand (Docket Entry # 33) is **ALLOWED** to this extent. The first motion to remand (Docket Entry # 11) is **MOOT**. In the interest of judicial economy and expediency, the request for sanctions (Docket Entry # 12, pp. 6-7) is **DENIED** without prejudice to be renewed before the state court.

      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge